**Michael JOHNSON, Plaintiff,**

v.

**Jesse BROWN, as Secretary of the Department of Veterans Affairs, Defendant.**

**No. Civ.A.96–01686(HHK).**

United States District Court, District of Columbia.

Nov. 6, 1998.

Leizer Z. Goldsmith, Washington, DC, for Plaintiff.

Nancy R. Page, U.S. Attorney's Office, Civil Division, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

KENNEDY, District Judge.

Michael Johnson alleges that his former employer, the Department of Veterans Affairs Medical Center ("Medical Center"), failed to reasonably accommodate his disability as mandated by the Rehabilitation Act, 29 U.S.C. §§ 701 *et. seq.* When Johnson was unable to continue to perform his job as a janitor due to an injured back, the Medical Center placed him on light duty in its operating room "pack room." Five months later, the Medical Center initiated the process to remove Johnson and eventually terminated him. Johnson contends that the Medical Center should have accommodated him by allowing him either to work indefinitely in the pack room on a light duty assignment, or to work there in a vacant full-time position.

Before the court is the Medical Center's motion to dismiss, or, in the alternative, for summary judgment ("motion for summary judgment"). The Medical Center contends that it would be unreasonable to allow Johnson to work on a light duty assignment indefinitely; that placing Johnson in the pack room as a permanent employee would be a promotion; and that to allow Johnson to continue working in the pack room would be an undue hardship. The Medical Center's motion for summary judgment must be denied because there is a material factual dispute as to whether accommodating Johnson in the way he proposed would have been reasonable.

### I. BACKGROUND

Michael Johnson began work for the Medical Center in April, 1991, as a Housekeeping Aide ("janitor") in the Environmental Management Service ("EMS"). His duties included mopping, scrubbing and stripping floors, washing walls and doors, cleaning glass, and changing cubicle curtains.

Johnson had several back injuries during his time at the Medical Center. He first suffered a job-related back injury in June, 1993, (Johnson Aff. ¶ 8) and reinjured his back in April, 1994. His private physician diagnosed him as suffering from a herniated disc and directed him not to return to his regular work. When Johnson returned to work on May 16, 1994, the Chief of EMS temporarily placed Johnson on "light duty" in the operating room pack room to accommodate his disability.

Johnson's light duty assignment in the pack room entailed the same responsibilities as the two full-time positions there. Although the pack room's two full-time positions carried a higher wage-grade than Johnson's janitorial position, Johnson was paid at his lower janitorial wage-grade.[1] There are no policies that explicitly prohibit how long an employee can remain on a light duty assignment in the pack room. (Compl.¶ 28.) [2]

Before Johnson returned to work in May, 1994, the Chief of EMS, Jack Simms, requested that Johnson undergo a "fitness for duty examination." Simms later testified at an administrative hearing that his intent at that time was to remove Johnson. (Admin.Hr'g.I:216). He also testified that Johnson had been on light duty for a long time, although in fact, Johnson had not yet been placed on light duty. (Admin.Hr'g.I:267). The fitness for duty examination was conducted on June 8, 1994, and the examining physician concluded that Johnson was able to perform light duties only. (Admin.Hr'g.II:36–37).

In July, 1994, the Medical Center initiated the process to remove Johnson from his janitorial position. During this time, Johnson continued to be treated for his injuries, but his condition did not improve. For its part, the Medical Center periodically reviewed whether there were any vacancies available; each time it concluded that there were "no appropriate vacancies" and that there were "no light duty vacancies for which employee qualifies." (Def.Motion, App.V) Consequently, on November 4, 1994, the Chief of EMS sent Johnson a proposed notice of separation.

---

1. Johnson asserts that the Office of Personnel Management guidelines do not support the assignment of a WG–3 grade level to the pack room position. Pl. Statement of Facts ¶ 99.

2. Johnson asserts that the position of "linen clerk—Light Duty Assignment" was established in 1988. (Admin.Hr'g.II, Ex. 1)

While Johnson was contesting the decision to terminate him, an employee left one of the full-time positions in the pack room, thereby creating a vacancy. Compl. ¶ 60. Johnson asked to be placed in this position. Compl. ¶ 64. The Medical Center did not grant Johnson's request. Instead, it terminated him on March 17, 1995. Compl. ¶ 71.

Also in March, 1995, two other employees began working in the pack room on light duty assignments. One was assigned to work there two days a week; the other, an employee at the same grade as Johnson, was assigned to work there three days per week. Pl. Statement of Facts ¶ 91, Compl. ¶ 72. The latter employee had been on light duty for over a year. The total amount of time per week that these two employees worked in the pack room was the same amount of time per week as Johnson's light duty assignment. As of July, 1996, no employee had been placed in the vacant full-time position in the pack room. Compl. ¶ 74.

Johnson appealed his termination and an administrative law judge denied plaintiff's Rehabilitation Act claim on July 27, 1995. That decision was upheld by the Merit Systems Protection Board. This suit followed.

## II. ANALYSIS

Johnson has exhausted his administrative remedies. Therefore, this court makes a *de novo* review of his allegations. *Carr v. Reno*, 23 F.3d 525, 528 (D.C.Cir.1994).

Under Fed.R.Civ.P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is

no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

Johnson brings his claim under the Rehabilitation Act, which provides relief for meritorious claims of discrimination brought by disabled federal employees. 29 U.S.C. §§ 701 *et seq.* Johnson must show that he is: (1) a handicapped person that (2) with reasonable accommodation can (3) perform the essential functions of the position he holds or seeks. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993).[3] Once Johnson has estab-

---

**3.** Johnson's claim is based upon a reasonable accommodation theory, not a disparate treatment theory. The D.C. Circuit has held that the *McDonnell Douglas* framework used in disparate treatment cases is not applicable for a claim based on a reasonable accommodation theory and therefore, that a reasonable accommodation claim can be tested through the "application of traditional burdens of proof." *Barth v. Gelb*, 2 F.3d at 1185–1186 (explaining categories of cases brought under the Rehabilitation Act) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In *Aka v. Washington Hospital Center* 156 F.3d 1284, 1288 (D.C.Cir.1998), the D.C. Circuit drew the same distinction between disparate treatment and reasonable accommodation for claims brought under the Americans with Disabilities

Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, but the court did not directly address the plaintiff's burden in a reasonable accommodation case.

Other circuits have developed alternative frameworks and have criticized *Barth* because it increases a plaintiff's initial burden in a reasonable accommodation case. In *Woodman v. Runyon*, 132 F.3d 1330, 1344 (10th Cir.1997) the Tenth Circuit stated that "a plaintiff's burden of production with respect to the plausibility of reasonable accommodation is one of production only" and that burden was "not a heavy one." Similarly, the Second Circuit "charts a middle course" in allocating the burden of proving the reasonableness of an accommodation. *Borkowski v. Valley Central School District*, 63 F.3d 131, 137–138 (2nd Cir.1995). The Fifth and Ninth Circuits have substantially reduced a plaintiff's

lished this, the Medical Center then bears the burden of proving that the accommodation would be an undue hardship. *Id.* at 1186.

It is assumed for the purposes of the present motion that Johnson is disabled; that he can perform the essential functions of a pack room employee; and that he cannot perform the essential functions of the original position he held as a janitor. Contrary to the Medical Center's assertions, Johnson is not required to show that he can perform the essential functions of the original position he held. The regulations that implement the Rehabilitation Act define a "qualified individual with handicaps" as one who, *"with or without reasonable accommodation,* can perform the essential functions of the *position in question* without endangering the health and safety of the individual or others." 29 C.F.R. § 1614.203(a)(6) (emphasis added). When that provision is read in light of 29 C.F.R. § 1614.203(g), which requires federal employers to reassign disabled employees,[4] it is clear that the reference to "position in question" includes "positions which the employee could have had as a result of reassignment." *Mareno v. Department of Veteran's Affairs,* EEOC No. 01930722 (November 12, 1993) at XII–371. As a result, the Medical Center's reliance on case law rendered prior to the adoption of 29 C.F.R. § 1614.203(g) is misplaced. See 57 Fed.Reg. 12637 (1992) ("Cases involving reassignment would rely on [29 C.F.R. § 1614.203(g) ] and not the reasonable accommodation regulation or case law.").

Moreover, adopting the Medical Center's view of the regulation would nullify its reassignment requirement. In a recent case involving reassignment as a means of effecting a reasonable accommodation under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.,* this circuit's court of appeals rejected an argument analytically indistinguishable from the one the Medical Center asserts here. The court explained that "[u]nder [the defendant's] reading, an employee cannot obtain reassignment if he is not 'otherwise qualified' for their current position. But under the EEOC's guidelines, ... only employees who are not 'otherwise qualified' should be reassigned. In other words, employees should only be reassigned if they have no entitlement to reassignment." *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1300 (D.C.Cir.1998). Because Johnson must only show that he can perform the essential functions of the position to which he seeks reassignment, it is irrelevant for the purposes of the Medical Center's motion for summary judgment that Johnson cannot perform the essential functions of the janitorial position.

Accordingly, to survive the motion for summary judgment, Johnson must provide "evidence that [he] can be reasonably accommodated—which includes reasonable reassignment—sufficient to require submission to a jury." *Woodman v. Runyon,* 132 F.3d 1330, 1337 (10th Cir.1997). Johnson must also demonstrate that there is a genuine factual issue as to whether the accommodation would be an undue hardship.

burden by placing the "initial burden on the employer to demonstrate that the plaintiff can not reasonably be accommodated." See *Woodman v. Runyon,* 132 F.3d 1330, 1343–1344 (10th Cir.1997) (citing cases).

4. The regulations provide in pertinent part:
When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position ... at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of

its program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required ...
If the agency has already posted a notice or announcement seeking applications for a specific vacant position at the time the agency has determined that the nonprobationary employee is unable to perform the essential functions of his position even with reasonable accommodation, then the agency does not have an obligation to reassign the individual to that position, but the agency must consider the individual on an equal basis with those who applied for the position ...
29 C.F.R. § 1614.203(g).

## A. Reasonable Accommodation

As a federal employer, the Medical Center has a heightened duty to accommodate the disabled. See 29 U.S.C. § 791(b); *Woodman*, 132 F.3d at 1338. In particular, section 791 requires federal agencies to submit "an affirmative action program plan" for the "hiring, placement, and advancement of individuals with disabilities." 29 U.S.C. § 791(b). See also *Southeastern Community College v. Davis*, 442 U.S. 397, 410–411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (contrasting requirements for affirmative action for federal employees with the requirements imposed on federal grantees); *Carr v. Reno*, 23 F.3d 525, 528 (D.C.Cir.1994). Federal courts have the power to fashion remedies for violations of section 791(b). 29 U.S.C. § 794a(a)(1); *Langon v. Department of Health and Human Services*, 959 F.2d 1053, 1057 (D.C.Cir.1992). Federal grantees, who also have a statutory duty to reasonably accommodate the disabled, are not subject to the affirmative action provision. See 29 U.S.C. § 794; *Southeastern Community College, supra* at 410–411, 99 S.Ct. 2361. The regulations that implement the Rehabilitation Act incorporate the extra statutory responsibilities of federal employers, which include federal agencies such as the Medical Center. 29 C.F.R. § 1614.203(b) ("The Federal Government shall become a model employer of individuals with handicaps. Agencies shall give full consideration to the hiring, placement, and advancement of qualified individuals with handicaps.").

The regulations also require federal employers to reasonably accommodate disabled employees [5] and to offer to reassign employees who can not be reasonably accommodated in their current position.[6] When a disabled employee given reasonable accommodation is unable to perform the essential functions of his job, "*an agency shall offer to reassign* the individual to a funded vacant position ... *at the same grade or level*, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of its program." 29 C.F.R. § 1614.203(g) (emphasis added). If such a position is not available at the same grade or level, "reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required." *Id.* Thus, the regulations do not require an employer to promote an employee to a higher wage level; nor do they require an employer to create a position where no vacancy exists. *Mengine v. Runyon*, 114 F.3d 415, 418 (3rd Cir.1997) (Postal Service not required to "transform temporary light duty jobs into permanent jobs to accommodate [the employee's] disability"); *Owens v. United States Postal Service*, EEOC Petition No. 03930129 (Dec. 17, 1993).[7]

---

**5.** In pertinent part, the regulations provide as follows:

(1) An agency shall make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

(2) Reasonable accommodation may include, but shall not be limited to:

(i) Making facilities readily accessible to and usable by handicapped persons; and

(ii) Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

29 C.F.R. § 1614.203(c).

**6.** The regulations were changed in response to a recent amendment to the Rehabilitation Act. In 1992, Congress amended the Rehabilitation Act by providing that the standards of the ADA would be used to determine whether a violation of the Rehabilitation Act had occurred. 29 U.S.C. §§ 791(g), 794(d). Under the ADA, "the term 'reasonable accommodation' may include ... reassignment to a vacant position." 42 U.S.C. § 12111(9).

**7.** Johnson survives summary judgment on the issue of whether the Medical Center should have reasonably accommodated him on this basis alone. Thus, it is unnecessary to consider whether allowing Johnson to be placed in the vacant full-time position would be a reasonable accommodation. Moreover, Johnson has produced some evidence that puts in dispute the Medical Center's assertion that it would be unreasonable to place him in the full-time position. According to Johnson, the personnel guidelines indicate that the full-time positions in the pack room should be at Johnson's pay level, rather

■ Nevertheless, a genuine dispute of material fact exists as to whether it would have been a reasonable accommodation to allow Johnson to continue working indefinitely on light duty in the pack room. The Medical Center has allowed another employee to continue indefinitely on a light duty assignment. Although the Medical Center has attempted to distinguish that employee's situation because he still fulfills some of his original job duties, the plaintiff has presented evidence from which it could be inferred that it would have been reasonable to allow Johnson to work indefinitely in the pack room. Indeed, this other employee began a light duty assignment at the same time that Johnson was terminated, and an additional employee was also given a light duty assignment. Moreover, by asserting that there were several full-time vacancies at the agency, Johnson has cast doubt upon the Medical Center's argument that Johnson's light duty assignment was "using up" a full-time position. Because it can be inferred that the Medical Center has accommodated an employee in a similar situation, there is a factual dispute as to whether reassignment is "reasonably available under the employer's existing policies." *Woodman v. Runyon,* 132 F.3d at 1346 (quoting from School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). See also *Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488, 1492–93 (M.D.Ala.1994) (genuine factual dispute existed where employer subject to ADA had accommodated other employees by reassigning them to light duty for long periods of time, even though employer asserted that temporary light duty assignments could not be extended indefinitely).

■ Drawing all justifiable inferences in favor of the plaintiff, a reasonable fact finder could conclude that the Medical Center terminated Johnson so that another employee, slightly less disabled than Johnson, could work in the light duty assignment in the pack room. For private employers subject to the ADA, the duty to consider reassignment means more than "treating a disabled employee like any other job applicant." *Aka,* 156 F.3d at 1303-04 (ADA legislative history that warns against "preferences" for disabled applicants does not preclude reasonable accommodation). As a federal employer, the Medical Center has an even greater responsibility to reassign Johnson than the employer in *Aka* because federal employers are required to promote affirmative action policies for the disabled. 29 U.S.C. § 791(b); *Woodman,* 132 F.3d at 1338.[8]

**B. Undue Hardship**

The Medical Center relies on the same concerns it expresses about the allocation of full-time positions to assert that it would be an undue hardship to place Johnson in the pack room, either in the full-time position or in the light duty assignment. Although an argument based on undue hardship may be similar to one based on reasonable accommodation, as is true here, it is an affirmative defense which the employer must prove. *Barth,* 2 F.3d at 1186. For the purposes of a summary judgment motion, the fact that the Medical Center has allowed other employees to have a light duty assignment in the pack room creates an inference that there has not been undue hardship. See *Johnson v. United States Postal Service,* EEOC No. 05910506, XII 79–80 (Aug. 1, 1991) (no undue hardship to allow plaintiff to work permanently in a light duty position when defendant had allowed another employee the same accommodation); *Hinton v. Veterans Administration,* EEOC No. 01853440 (July 14, 1987), *rev'd on other grounds, Hinton v. Derwinski,* 1989 WL 609614 (E.E.O.C.1989), (reassigning plaintiff to a position that normally was filled through merit promotion plan was not an undue hardship).

The accommodation that Johnson has requested should be distinguished from the one

---

than at their current, higher pay level. It is also not an obstacle to Johnson's claim that he never formally applied for the vacant position. *Hinton v. Department of Veteran's Affairs,* EEOC 01853440 (July 14, 1987); cf. *Aka,* 156 F.3d at 1314, n. 27 (under ADA, private employer has obligation to help disabled employee identify appropriate job vacancies).

8. As discussed above, to the extent that the Medical Center's argument relies on case law rendered prior to the adoption of 29 C.F.R. § 1614.203(g), the regulation that requires reassignment as part of a federal employer's affirmative action responsibilities, that reliance is misplaced. See E.E.O.C Interpretive Guidelines, 57 Fed.Reg. 12637 (1992).

at issue in *Barth.* In that case, an employee of the Voice of America who did not require accommodation in his current position sought a new assignment in the permanent Foreign Service. When the plaintiff failed the medical clearance required for that assignment, he asked to be permanently assigned to one of a handful of overseas posts that had medical facilities sufficient for his needs. *Id.* at 1188. The court held that it would be an undue hardship on the defendant, the United States Information Agency, to assign the plaintiff to a permanent post because the agency would lose the "essential operational flexibility" that it needed to rotate a small number of employees through the twelve overseas posts. *Id.* at 1188–89. Unlike this case, where Johnson has contested the plausibility of the Medical Center's need to fully utilize its full-time positions, the court was required to accept the factual findings of the district court on the defendant's need for operational flexibility because the plaintiff had not challenged them on appeal. In addition, the defendant was not subject to the regulation requiring reassignment because the plaintiff was not an employee unable to perform the essential functions of his existing position. See 29 C.F.R. § 1614.203(g). In this case, the applicability of the reassignment regulation and Johnson's allegations create a genuine factual dispute as to whether it would be an undue hardship to accommodate Johnson.

### III. CONCLUSION

The Medical Center has not demonstrated that it is entitled to prevail as a matter of law because there is a material factual dispute regarding whether the Medical Center reasonably accommodated Johnson's disability. This inquiry—like other judicial determinations where the touchstone is "reasonableness"—is almost always fact-bound and particularly suited for determination by a jury.

Accordingly, it is this 5th day of November, 1998, hereby,

**ORDERED** that the defendant's motion to dismiss or, in the alternative, for summary judgment must be denied.